UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL GRESHAM,

                       Plaintiff,

v.

A. AWOMOLO et al.,

                       Defendants.

_____/

Case No. 1:24-cv-242

Honorable Robert J. Jonker

## **OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has sought leave to proceed *in forma pauperis*, and the Court will grant Plaintiff's request.[1]

    Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

---

[1] The Court notes that Plaintiff has had more than three lawsuits dismissed on the grounds that they were frivolous, malicious, and/or failed to state a claim. *See Gresham v. Caruso*, No. 2:10-cv-196 (W.D. Mich. Oct. 27, 2011); *Gresham et al. v. Canlis*, No. 2:11-cv-179 (W.D. Mich. July 29, 2011); *Gresham v. Paine*, No. 1:10-cv-1146 (W.D. Mich. Mar. 8, 2011); *Gresham v. Caruso*, No. 1:10-cv-1038 (W.D. Mich. Jan. 26, 2011); *Gresham v. Wolak*, No. 2:10-cv-239 (W.D. Mich. July 25, 2011); *Gresham v. Verville*, No. 2:10-cv-198 (W.D. Mich. Jan. 19, 2011); *Gresham v. Caruso*, No. 2:10-cv-195 (W.D. Mich. Apr. 11, 2011); *Gresham v. Mich. Dep't of Corr.*, No. 2:07-cv-241 (W.D. Mich. June 9, 2008). Plaintiff has also been denied leave to proceed *in forma pauperis* on numerous occasions because of the "three-strikes" rule set forth in 28 U.S.C. § 1915(g). *See Gresham v. Hemmer*, No. 1:23-cv-1110, 2023 WL 7013303, at *2 (W.D. Mich. Oct. 25, 2023) (listing cases). Plaintiff's instant complaint, however, sufficiently alleges that he is in imminent danger of serious physical harm, as is required for someone who has accrued at least "three strikes" to show in order to be granted leave to proceed *in forma pauperis*.

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Dunlap and Mason for failure to state a claim.

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Awomolo, Shembarger, Porter, Lyon, Rademaker, Hall, and Burgess: (1) Plaintiff's Eighth Amendment failure to intervene claims against Defendants Porter, Lyon, Rademaker, Hall, and Burgess; (2) Plaintiff's Eighth Amendment claims premised upon risks of suicide; (3) Plaintiff's Eighth Amendment claims premised upon verbal harassment; (4) Plaintiff's claims premised upon the handling of his grievances; and (5) Plaintiff's civil conspiracy claims.

All Plaintiff's state law claims against any Defendant will also be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The following claims against Defendants Awomolo, Shembarger, Porter, Lyon, Rademaker, Hall, and Burgess remain in the case: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment excessive force claims against Defendants Awomolo and Shembarger; and (3) Plaintiff's Eighth Amendment claim against Defendant Awomolo premised upon food tampering. Additionally, the Court will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.10).

<u>**Discussion**</u>

## I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ECF personnel: Warden Michael Burgess; Acting Lieutenant Unknown Hall; Sergeants Daniel Porter, Unknown Lyon, and

2

Unknown Rademaker; Registered Nurse Candi Mason; Master Social Worker Sierra Dunlap; and Corrections Officers A. Awomolo and Unknown Shembarger. Plaintiff indicates that he is suing all Defendants in their official and personal capacities. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff alleges that in January of 2024, Defendants Burgess, Porter, Hall, Lyon, and Rademaker came to Plaintiff's cell "and told him if he didn't stop filing [Prison Rape Elimination Act (PREA)] grievances he would be assaulted and written false misconducts by the staff at [ECF] and denied medical treatment to cover up such abuse." (*Id.*, PageID.4.)

On January 9, 2024, Defendants Awomolo and Shembarger came to Plaintiff's cell and handcuffed Plaintiff. (*Id.*) Plaintiff alleges that they handcuffed him tightly, "cutting off the circulation and causing lacerations and his wrists to swell." (*Id.*) Plaintiff was taken to see Defendant Dunlap. (*Id.*) He contends that Defendants Awomolo and Shembarger refused to uncuff him, and that he "could not show documents and articulate and gesture with his hands" to Defendant Dunlap. (*Id.*) Plaintiff asked Defendant Dunlap to ask the officers to remove the handcuffs; Defendant Dunlap responded, "That is your problem now Gresham[;] you should not have filed those PREA reports." (*Id.*)

Plaintiff filed a grievance and talked to Defendants Rademaker and Hall about the incident. (*Id.*) He told them that video footage would support his assertion that Defendants Awomolo and Shembarger never removed the tight handcuffs. (*Id.*) Plaintiff alleges that Defendants Rademaker and Hall "falsified documents and stated the handheld video camera did not report him asking for the handcuffs to be removed." (*Id.*, PageID.4–5.) Plaintiff also faults Defendant Burgess for covering up the use of excessive force when he "failed to report the findings of the video cameras." (*Id.*, PageID.5.)

Plaintiff submitted a medical kite, and Defendant Mason came to his cell. (*Id.*) She told Plaintiff that she was refusing his request for medical attention, stating that Plaintiff did not have "anything coming" per Defendants Porter, Burgess, Lyon, Rademaker, and Hall. (*Id.*) Plaintiff responded that his wrists could get infected. (*Id.*) Defendant Mason stated, "I hope so[,] that's the idea[,] you catch gangrene and your hands have to be amputated." (*Id.*)

Plaintiff goes on to state that he has been diagnosed with bipolar disorder, anxiety, and depression, and that Defendants know that Plaintiff should not be subjected to abuse "which could exacerbate his mental health disorders." (*Id.*, PageID.7.) He avers that he is "under imminent danger of serious physical injury from potential suicide." (*Id.*, PageID.8.) Plaintiff indicates that he has previously attempted suicide when subjected to abuse by "overdosing on various and unknown pills and medication[,] swallowing razors and foreign objects[, and] cutting his wrists." (*Id.*)

Plaintiff then alleges that on February 5, 2024, Defendant Awomolo handcuffed Plaintiff tightly again, cutting off his circulation, before escorting him to a callout. (*Id.*, PageID.8–9.) That same day, Defendant Shembarger told Plaintiff, "We're going to put you through so much pain Gresham[, you're] going to want to die." (*Id.*, PageID.9.)

On February 6, 2024, Defendants Awomolo and Shembarger handcuffed Plaintiff too tightly again. (*Id.*) They did the same on February 9, 2024, before escorting Plaintiff to the showers. (*Id.*) Plaintiff alleges that while he was being placed in the shower, Defendant Shembarger told Plaintiff, "I told you snitch to federal court [and life is] going to get bad for you." (*Id.*)

On February 14, 2024, Defendant Shembarger handcuffed Plaintiff too tightly, "cutting off circulation and causing lacerations to [his] wrists." (*Id.*)

On February 19, 2024, Defendant Awomolo told non-party Officer Stone to hold Plaintiff while Stone cuffed him and allowed another inmate to hit Plaintiff with soap in a sock. (*Id.*)

On February 20, 2024, Defendant Awomolo gave Plaintiff a food tray and stated, "You like to file grievances and lawsuits[;] you'll like the surprise." (*Id.*) Plaintiff alleges that he ate his pizza, and "10 minutes later he was vomiting food and blood." (*Id.*) Defendant Awomolo told Plaintiff: "Next time I'm going to put something in your food that kills you." (*Id.*)

On February 23, 2024, Defendants Awomolo and Shembarger had non-party officer Stone hold Plaintiff in the shower while another inmate hit Plaintiff in the head with soap in a sock. (*Id.*) This occurred again on February 28, 2024, at Defendant Awomolo's direction. (*Id.*)

On March 4, 2024, Defendant Awomolo cuffed Plaintiff too tightly, "causing deep lacerations [and] cutting off [his] circulation." (*Id.*) Defendant Awomolo then held Plaintiff in the showers while another inmate hit Plaintiff in the head with soap in a sock, knocking Plaintiff out. (*Id.*) Plaintiff states his "life [is] still in danger." (*Id.*)

Based upon the foregoing, Plaintiff asserts the following claims for relief: (1) First Amendment retaliation claims; (2) Eighth Amendment claims premised upon excessive force, failure to intervene, denial of medical care, indifference to Plaintiff's suicidal tendencies, tampering with food, and verbal harassment; (3) civil conspiracy claims; and (4) claims regarding violations of MDOC policies and procedures. The Court also construes Plaintiff's complaint to assert claims related to the handling and rejection of his grievances. Plaintiff requests that the Court appoint counsel to represent him. (*Id.*, PageID.10.) He also seeks $2 billion in punitive damages and $10 million in compensatory damages. (*Id.*) Finally, Plaintiff asks that the MDOC implement prison reform by working with various organizations. (*Id.*)

## II.      Request for Counsel

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Accordingly, Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.10) will be denied.

## III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

6

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.      First Amendment Retaliation Claims

Throughout his complaint, Plaintiff suggests that Defendants violated his First Amendment rights by retaliating against him in various ways.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that the various retaliatory acts occurred because he filed grievances and PREA complaints. Plaintiff, therefore, has adequately alleged protected conduct for his retaliation claims. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court will consider below whether Plaintiff has adequately alleged facts regarding the second and third elements for each named Defendant.

### 1.     Defendants Porter, Lyon, Rademaker, Hall, and Burgess

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606.

In his complaint, Plaintiff alleges that in January of 2024, Defendants Porter, Lyon, Rademaker, Hall, and Burgess came to Plaintiff's cell and told him "if he didn't stop filing PREA grievances, he would be assaulted and written false misconducts by the staff at [ECF] and denied medical treatment." (Compl., ECF No. 1, PageID.4.) A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). Here, the alleged threat made by Defendants Porter, Lyon, Rademaker, Hall, and Burgess was quite specific. Moreover, the threat was directly tied to Plaintiff's protected conduct—the filing of PREA complaints. While Plaintiff has by no means proven retaliation, taking his allegations as

true and in the light most favorable to him, the Court concludes that Plaintiff's retaliation claims against Defendants Porter, Lyon, Rademaker, Hall, and Burgess may not be dismissed on initial review.

### 2.      Defendants Awomolo and Shembarger

Plaintiff alleges that Defendants Awomolo and Shembarger repeatedly used handcuffs that were too tight on him. He states further that Defendants Awomolo and Shembarger would cuff him, hold him, and allow another inmate to assault him with soap in a sock. Finally, Plaintiff contends that Defendant Awomolo tampered with his food tray on February 20, 2024. All of these actions certainly qualify as adverse action.

Plaintiff also suggests that Defendants Awomolo and Shembarger took these actions because of Plaintiff's protected activity. For example, on February 9, 2024, Defendant Shembarger handcuffed Plaintiff too tightly and took him to the showers, where he stated, "I told you snitch to federal court life's going to get bad for you." (Compl., ECF No. 1, PageID.9.) On February 20, 2024, Defendant Awomolo told Plaintiff, "You like to file grievances and lawsuits[;] you'll like the surprise." (*Id.*) Although Plaintiff has by no means proven retaliation, taking his allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's retaliation claims against Defendants Awomolo and Shembarger may not be dismissed on initial review.

### 3.      Defendant Dunlap

Plaintiff's complaint can also be construed to assert a First Amendment retaliation claim against Defendant Dunlap. Plaintiff alleges that on January 9, 2024, Defendants Amowolo and Shembarger cuffed him to take him to see Defendant Dunlap, Plaintiff's social worker. (*Id.*, PageID.4.) Plaintiff states that because the cuffs were too tight, he "could not show documents and articulate and gesture with his hands to his mental health case worker as he was in pain." (*Id.*) Plaintiff asked Defendant Dunlap to ask staff to remove the cuffs and report the abuse; Defendant

Dunlap responded, "That is your problem now Gresham[,] you should not have filed those PREA reports." (*Id.*)

Although Defendant Dunlap allegedly referred to Plaintiff's PREA complaints, Plaintiff's complaint is devoid of facts suggesting that Defendant Dunlap took any action that rises to the level of adverse action. Rather, Plaintiff appears to fault Defendant Dunlap for failing to act on Plaintiff's oral complaint. However, "allegations of inaction are not sufficient to establish an actionable claim for retaliation." *See L.H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213, 216 (3d Cir. 2016); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 739–40 (S.D. Ohio 2022) (relying upon *L.H.* to dismiss a prisoner-plaintiff's First Amendment retaliation claim premised upon an officer's failure to assist the prisoner when he asked for help). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Dunlap.

### 4.    Defendant Mason

The Court has also construed Plaintiff's complaint to assert a First Amendment retaliation claim against Defendant Mason. According to Plaintiff, Defendant Mason refused to provide medical care for Plaintiff's wrists, and, in response to Plaintiff's assertion that his wrists could get infected, Mason said, "I hope so[,] that's the idea[,] you catch gangrene and your hands have to be amputated." (Compl., ECF No. 1, PageID.5.) Defendant Mason also allegedly told Plaintiff that she was denying medical care because Plaintiff did not "have anything coming per Porter, Burgess, Lyon, Rademaker, and Hall." (*Id.*)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Certainly, denying medical care to an inmate can qualify as adverse action. Here, however, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Mason. Although Defendant Mason allegedly told Plaintiff that he would not get medical care per Defendants Porter, Burgess, Lyon, Rademaker, and Hall, nowhere in Plaintiff's complaint does he allege *facts* from which the Court could infer that Defendant Mason denied medical care because of Plaintiff's protected conduct. Plaintiff's complaint is devoid of facts suggesting that Defendant Mason was even aware of Plaintiff's protected conduct. Simply because one event precedes another does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Mason.

**B.     Eighth Amendment Claims**

Throughout his complaint, Plaintiff alleges that Defendants violated his Eighth Amendment rights in various ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is

12

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Excessive Force/Failure to Intervene

Throughout his complaint, Plaintiff contends that various Defendants either used excessive force against him or failed to intervene to stop the use of excessive force.

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582

(6th Cir. 2011). Furthermore, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any

physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

### a.     Defendants Amowolo and Shembarger

Throughout his complaint, Plaintiff alleges that on numerous occasions, Defendants Amowolo and Shembarger used handcuffs on Plaintiff and applied them too tightly, cutting off his circulation and leaving marks. Plaintiff states that he brought the tightness of the handcuffs to their attention, but that the issue continued. Plaintiff also alleges that on several occasions, Defendants Amowolo and Shembarger handcuffed him, held him in place, and allowed other inmates to assault him with soap in a sock. Given these allegations, Plaintiff's Eighth Amendment excessive force claims against Defendants Amowolo and Shembarger may not be dismissed on initial review.

### b.     Defendant Dunlap

Plaintiff alleges that on January 9, 2024, Defendants Amowolo and Shembarger cuffed him to take him to see Defendant Dunlap, Plaintiff's social worker. (Compl., ECF No. 1, PageID.4.) Plaintiff states that because the cuffs were too tight, he "could not show documents and articulate and gesture with his hands to his mental health case worker as he was in pain." (*Id.*) Plaintiff asked Defendant Dunlap to ask staff to remove the cuffs and report the abuse; Defendant Dunlap responded, "That is your problem now Gresham[,] you should not have filed those PREA reports." (*Id.*)

As noted above, an individual can be liable for failing to intervene in another officer's use of excessive force where the individual "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429). Here, Plaintiff alleges only that he asked Defendant Dunlap to ask staff to remove the cuffs and "report the abuse"; he does not allege any *facts* from which the Court could infer that Plaintiff told Defendant Dunlap

about the tight handcuffs and that she was aware of his pain. Indeed, Plaintiff's allegations suggest that Defendant Dunlap was only aware that Plaintiff "could not show documents" or "articulate and gesture with his hands" due to the handcuffs, not that Defendant Dunlap was aware that Plaintiff was in pain. Moreover, Plaintiff fails to allege facts suggesting that Defendant Dunlap had "the means to prevent the harm from occurring." *Id.* While Defendant Dunlap could have certainly asked the officers to uncuff Plaintiff, nothing in Plaintiff's complaint suggests that officers would have had to comply with that request. Moreover, nothing in the complaint suggests that Defendant Dunlap had the means to adjust or remove the cuffs herself.

Plaintiff's conclusory allegations are simply insufficient to set forth an Eighth Amendment failure to intervene claim against Defendant Dunlap. Accordingly, that claim will be dismissed.

### c. Defendants Porter, Lyon, Rademaker, Hall, and Burgess

Plaintiff appears to suggest that Defendants Porter, Lyon, Rademaker, Hall, and Burgess are liable for Defendants Awomolo and Shembarger's use of excessive force because they "covered up and falsified evidence[] and directed and ordered assaults against Plaintiff." (Compl., ECF No. 1, PageID.6.) He also suggests that these individuals "failed to adequately train or supervise their subordinates." (*Id.*)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor

16

denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Porter, Lyon, Rademaker, Hall, and Burgess encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. As noted above, Plaintiff alleges that in January of 2024, these individuals came to Plaintiff's cell and told him that "if he didn't stop filing PREA grievances, he would be assaulted and written false misconducts by the staff at [ECF]." (Compl., ECF No. 1, PageID.4.) Nowhere in his complaint, however, does Plaintiff set forth facts suggesting that Defendants Porter, Lyon, Rademaker, Hall, and Burgess encouraged Defendants Awomolo and Shembarger to repeatedly handcuff Plaintiff too tightly and to hold him while other inmates assaulted him. Moreover, to the extent Plaintiff faults these individuals for

17

their responses to his grievances, that is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations are insufficient to state Eighth Amendment failure to intervene claims against Defendants Porter, Lyon, Rademaker, Hall, and Burgess. Accordingly, such claims will be dismissed.

### 2.    Denial of Medical Care

Plaintiff next alleges that Defendant Mason violated his Eighth Amendment rights by refusing to provide medical treatment for the lacerations to Plaintiff's wrists caused by the tight handcuffs. The Court has also construed Plaintiff's complaint to suggest that Defendants have been deliberately indifferent to his suicidal tendencies.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at *2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834 . To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's

need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.    Failure to Treat Wrists

Although Plaintiff has set forth facts suggesting that Defendant Mason denied him medical care and told Plaintiff that the idea was that he would "catch gangrene and [his] hands [would] have to be amputated" (Compl., ECF No. 1, PageID.5), Plaintiff has failed to allege facts that are sufficient for the objective prong of his denial of medical care claim. In other words, Plaintiff fails

20

to allege a sufficiently serious medical need. The Sixth Circuit has held that injuries such as minor cuts and lacerations, as well as swollen wrists, from tight handcuffs are not sufficiently serious medical conditions for purposes of an Eighth Amendment claim. *See Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (citing *Blackmore*, 390 F.3d at 898); *Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007); *see also Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (holding that swollen and bleeding wrists resulting from excessively tight handcuffs did not amount to a "serious medical need"). Plaintiff's complaint is devoid of facts regarding the extent of injury to his wrists from the tight handcuffs, and he fails to allege that he has experienced any lasting effects. While the Court does not condone Defendant Mason's alleged response to Plaintiff's request for medical care, Plaintiff's failure to allege sufficient facts regarding a serious medical need leads the Court to conclude that his Eighth Amendment denial of medical care claim against Defendant Mason must be dismissed.

### b.    Suicidal Tendencies

The Court has also construed Plaintiff's complaint to assert that Defendants have demonstrated deliberate indifference to his suicidal tendencies.

The Sixth Circuit has held that "[a]n inmate's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). With respect to suicidal tendencies, the Sixth Circuit has stated: "A plaintiff meets the objective prong of the [deliberate indifference] analysis by showing that the inmate *showed suicidal tendencies* during the period of detention or that he '*posed a strong likelihood of another suicide attempt*.'" *Id.* at 483 (emphasis added) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006); *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th

Cir. 2006)). This is because "[s]uicide is a difficult event to predict and prevent and often occurs without warning." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

The Sixth Circuit has concluded that steps to prevent suicide are constitutionally required only in cases where "it [i]s 'obvious that there [i]s a 'strong likelihood that [the] inmate w[ill] attempt suicide[.]'" *Troutman*, 979 F.3d at 483 (quoting *Dowward for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020)). "This is a high bar[.]" *Downard*, 968 F.3d at 601. Thus, the subjective component "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Id.* (citing *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014)). Moreover, "a prison official's duty to recognize an inmate's risk of committing suicide has a temporal component." *Andrews v. Wayne Cnty., Mich.*, 957 F.3d 714, 722 (6th Cir. 2020). To be held liable, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Linden*, 167 F. App'x at 421 (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

Even assuming that Plaintiff has alleged facts sufficient to meet the objective prong of an Eighth Amendment claim regarding his threats of suicide, he fails to allege sufficient facts to meet the subjective prong. Plaintiff states that he has a "history of suicide attempts when subjected to violations of his rights and abuse." (Compl., ECF No. 1, PageID.7.) He notes that in the past, he has overdosed on pills and medication, swallowed razors and other foreign objects, and cut his wrists. (*Id.*, PageID.8.) Plaintiff, however, has not set forth facts concerning when those attempts occurred. Moreover, Plaintiff's complaint is devoid of any allegations from which the Court could infer that Defendants were aware of Plaintiff's suicidal tendencies. Likewise, Plaintiff has not set

forth facts suggesting that he "was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Downard*, 968 F.3d at 601.

Suicide risks, particularly in a prison setting, are certainly serious. While the Court is sympathetic to Plaintiff's mental health needs, his complaint fails to set forth sufficient facts from which the Court could infer that Defendants were deliberately indifferent to Plaintiff's suicidal tendencies. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims premised upon risks of suicide.

### 3.   Tampering with Food

Plaintiff contends that on February 20, 2024, Defendant Awomolo gave Plaintiff a meal tray and stated, "You like to file grievances and lawsuits[;] you'll like the surprise." (Compl., ECF No. 1, PageID.9.) Plaintiff ate the pizza, and 10 minutes later, he was vomiting food and blood. (*Id.*) Defendant Awomolo said, "Next time I'm going to put something in your food that kills you." (*Id.*)

Intentionally tampering with an inmate's food by placing a foreign object inside of it can certainly rise to the level of deliberate indifference to a serious risk of harm. Here, while Plaintiff has by no means proven deliberate indifference, his allegations, especially his allegations concerning Defendant Awomolo's statements, permit an inference that Defendant Awomolo was aware that there was a foreign object in Plaintiff's food and did not act to prevent the tray from being served to Plaintiff. In light of these allegations, Plaintiff's Eighth Amendment claim against Defendant Awomolo premised upon food tampering may not be dismissed on initial review.

### 4.   Verbal Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon Defendants' verbal harassment and threats toward him. However, while unprofessional, allegations of verbal harassment or threats by prison officials towards an inmate

do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any intended Eighth Amendment claims premised upon Defendants' verbal harassment and threats.

### C. Claims Regarding Handling of Grievances and Complaints

In his complaint, Plaintiff faults Defendants Burgess, Rademaker, and Hall for the way they handled his grievances and complaints, suggesting that they falsified their responses to indicate that video footage did not support Plaintiff's version of events.

Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to

petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants Burgess, Hall, and Rademaker based on their handling of Plaintiff's grievances.

### D.      Civil Conspiracy Claims

Throughout his complaint, Plaintiff suggests that the named Defendants engaged in a conspiracy to violate his civil rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565–66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Plaintiff provides no allegations regarding any agreement among any of these individuals, other than the fact that they are employed at ECF and all of them are employed by the MDOC. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556

26

U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff's conspiracy claims under § 1983 will be dismissed.[2]

### E.      Violations of MDOC Policy and Procedure

Throughout his complaint, Plaintiff alleges that Defendants violated several MDOC policies and procedures. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts,

---

[2] Plaintiff's conspiracy claims also would be barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same). Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Johnson*, 40 F.3d at 840. Plaintiff's complaint is devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.

however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegations that Defendants violated MDOC policy and procedures, therefore, fail to raise cognizable federal constitutional claims.

Plaintiff may be seeking to invoke this Court's supplemental jurisdiction over state law claims for violations of MDOC policy and procedure. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

After balancing these factors, the Court will dismiss all Plaintiff's state law claims against any Defendant. The state law claims unnecessarily complicate proofs and raise state law immunity questions that are different from federal immunity questions.

## <u>Conclusion</u>

For the reasons set forth above, the Court will grant Plaintiff leave to proceed *in forma pauperis* and deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.10). Moreover, having conducted the review required by the PLRA, the Court determines that

Plaintiff's federal claims against Defendants Dunlap and Mason will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Awomolo, Shembarger, Porter, Lyon, Rademaker, Hall, and Burgess: (1) Plaintiff's Eighth Amendment failure to intervene claims against Defendants Porter, Lyon, Rademaker, Hall, and Burgess; (2) Plaintiff's Eighth Amendment claims premised upon risks of suicide; (3) Plaintiff's Eighth Amendment claims premised upon verbal harassment; (4) Plaintiff's claims premised upon the handling of his grievances; and (5) Plaintiff's civil conspiracy claims. The following claims against Defendants Awomolo, Shembarger, Porter, Lyon, Rademaker, Hall, and Burgess remain in the case: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment excessive force claims against Defendants Awomolo and Shembarger; and (3) Plaintiff's Eighth Amendment claim against Defendant Awomolo premised upon food tampering.

All Plaintiff's state law claims against all defendants will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

An order consistent with this opinion will be entered.


Dated:   <u>    March 28, 2024    </u>              <u>  /s/ Robert J. Jonker    </u>
                                          Robert J. Jonker
                                          United States District Judge

29